GREGG COSTA, Circuit Judge,
concurring in the judgment: .
I agree that we should deny the petition because direct appeal affords the Petitioners an adequate avenue for pursuing this *354 issue.[1]1 would leave it at that. The principle counseling against unnecessary rulings is strong in any case. But it is stronger still in the mandamus context. As an appellate court’s mandamus authority should be “reserved for really extraordinary causes,” Ex parte Fahey, 332 U.S. 258, 259-60, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947), this matter, with its compressed time frame, is not the place to decide the merits. By reaching out to do so when it is not necessary to the outcome, the majority opinion makes mandamus the “substitute for appeal” that it is not supposed to be. Id. at 260, 67 S.Ct. 1558.
The existence of an adequate remedy via direct appeal means we should not address whether Petitioners waived their Lexecon rights. The Supreme Court has said that the inadequacy of any other remedy is the first requirement a petitioner must show. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004), quoted in In re Volkswagen of America, Inc., 545 F.3d 304, 310 (5th Cir. 2008) (en banc). The priority given this condition makes sense as it is what “ensure[s] that the writ will not be used as a substitute for the regular appeals process.” Cheney, 542 U.S. at 380-81, 124 S.Ct. 2576. The majority opinion demonstrates the danger when this limitation is ignored: in addressing the merits, the majority opinion renders meaningless the direct appeal it ends up recognizing as the proper remedy. After being told by a court of appeals that it reached a “patently erroneous” result, what district court is going to go forward with the trial Petitioners are trying to prevent? The majority opinion cites no other example of a mandamus court telling a district court its ruling is in error even though it concludes that a direct appeal is adequate. That is not surprising. Such an approach effectively grants the writ the court says it is denying, overriding the essential limitation that mandamus be granted only when it is the only vehicle for relief. With this precedent, any future mandamus court can decide the merits even when the remaining requirements are not present.
As for the waiver question the majority opinion reaches out to address, Petitioners have not shown a “clear and indisputable” entitlement to relief. In another example of the restraint that should characterize mandamus review, that is the only question to consider. See, e.g., In re Beazley Ins. Co., No. 09-20005, 2009 WL 7361370, at *6 (5th Cir. May 4, 2009) (“Beyond our conclusion that Beazley has not established a clear and indisputable right to the issuance of the writ, we make no pronouncement one way or the other as to the correctness of the district court’s ruling.”). The district court did not misinterpret the law; it applied the same “clear and unambiguous” burden for establishing waiver that the majority opinion applies to Lexe-con waivers “as a matter of first impression.”[2] The factbound application of that standard is, as the majority opinion recognizes most courts have held, reviewed only for abuse of discretion. We should thus be *355 applying deference on top of deference as the mandamus inquiry is not whether the district court abused its discretion, but whether it indisputably abused its discretion in finding that the following email exchange, among other conduct, clearly waived Lexecon:
James M. Stanton [Special Master for the MDL]: Please confirm DePuy is willing to waive Lexecon for all MDL cases to be tried in Dallas.
Seth Roberts [Council for the Defendant]: Confirmed. In order to allow the Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas, defendants have agreed to waive Lex-econ objections to cases in the MDL proceeding being tried there.
Even if other judges could find differently as an initial matter, or even if they could view the district court’s finding to be an abuse of discretion, that is certainly not the only possible conclusion to draw. But that is what mandamus requires; a district court’s ruling is not indisputably erroneous if a reasonable argument can be made to support it. Here is that argument based on three features of the emails quoted above, which were exchanged after Petitioners had won the first bellwether and had no strong reason to fear Dallas trials:
• The first word is full agreement— “Confirmed”—with the Special Master’s broad, unqualified question whether DePuy is waiving Lexecon “for all MDL cases to be tried in Dallas.” The confirmation was not qualified, such as “Confirmed, but.”
• The language Defendants tout as a limitation—“in order to allow this Court to select the next round of bellwether cases from a broader pool of cases that can be tried in Dallas”— describes the reason for the waiver, not its scope, and contemplates that a broader pool of cases can be tried in Dallas.
• What is actually “agreed to” is phrased in broad,- unlimited terms: “agreeing] to waive Lexecon objections to cases in the MDL being tried there.”
What is more, the three references to the plural “cases” defeats Petitioners’ interpretation that this exchange is limited to the second bellwether, which at the time it anticipated being a single plaintiff case. There are numerous ways that sophisticated counsel for the Petitioners could have phrased the limitation on their waiver they only started to contend exists after they lost the second trial. As those caveats were not contemporaneously asserted, the district court took an arguably reasonable view that Petitioners made an unambiguous waiver of Lexecon for all then-anticipated bellwethers, which includes the fourth trial at issue here. Indeed, the district court recently said that the Lexecon waiver is limited to these bellwethers with the upcoming trial being the last one. And this analysis does not even get into additional conduct on which the district court relied in finding waiver, including multiple reports of the Special Master recounting Petitioners’ waiver as a global one to which Petitioners did not object.
But all this discussion about waiver is premature. We should allow the usual path of a direct appeal, which the majority opinion recognizes is available, to take its proper course and leave the merits to that future panel. I have concerns that an MDL process that takes trials away from local judges and juries adds to the centralizing trend that is so prevalent in the law and society generally. But in neglecting the strict limitations on our mandamus power to address the merits when we do not need to, the court engages in a different but also pernicious form of centralization: more *356 power in the hands of appellate judges rather than the trial judge who has lived with the case- for six years and knows the ins and outs of the parties’ representations.

. In arguing that a direct appeal is inadequate, the dissenting opinion discusses settlement pressure the defendants may be feeling. But that pressure would be the result of more than 9,000 cases being filed, not where those cases would be tried (especially as the Northern District of Texas is hardly known as a hot spot for tort litigation). If anything, sending thousands of cases back to hundreds of district judges around the country is likely to accelerate the number of trials as there will no longer be the constraint of a single judge’s schedule and resources.

. Holding that a court reached a "patently erroneous” result on a question that involves a matter of first impression is also in tension with the limited mandamus standard of review.